United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JORGE RAMIRO GARCIA-FIGUEROA,
Petitioner,
v.
CHRISTOPHER CHESTNUT, *et al.*,
Respondents.

Case No. 1:26-cv-08242 (EJD)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

Petitioner Jorge Ramiro Garcia-Figueroa is an immigration detainee awaiting the outcome of his removal proceedings. In his Petition for Writ of Habeas Corpus, he argues that his detention violates both his procedural and substantive due process rights. For the reasons that follow, the petition is GRANTED as to claim one of the petition. Because this claim affords Petitioner all the relief to which he is entitled—namely release from custody—the Court does not consider his remaining claims for relief.

## I. BACKGROUND

Petitioner is a citizen of Guatemala who last entered the United States in December 2021 without inspection by immigration authorities. Dkt. No. ¶ 24. Prior to his arrest by ICE, he lived in Washington with his wife and four children, two of whom are United States citizens. *Id.* ¶ 25. He also worked as a painter and was an active member of his church. *Id.* Petitioner has no criminal history. *Id.*; Dkt. No. 10-1 at 4.

On August 10, 2026, Petitioner was driving when he noticed a black vehicle following him. Dkt. No. 1 ¶ 27. Petitioner alleges that the vehicle was unmarked and did not have any lights or sirens on, so he became afraid. *Id.* ¶ 27. Fearful that the occupants inside the vehicle were

dangerous, Petitioner stopped at a dead end, got out of his car and began to run. *Id.* ¶ 28. When the officers yelled stop, Petitioner looked back and realized they were ICE officers, so he stopped running. *Id.* The officers then placed him under arrest. *Id.*

Petitioner alleges that the officers did not provide him with a warrant, Notice to Appear, or other immigration paperwork before taking him into custody. *Id.* ¶ 29. Indeed, it appears that ICE officers began following Petitioner in the first instance because he appeared to be fleeing. Dkt. No. 10-1 at 2–4. A warrant for his arrest, and Notice to Appear placing Petitioner in removal proceedings, were issued only after he was taken into custody. *Id.* at 3, 8–11. Petitioner was never served with a Notice of Custody Determination informing him of the reason for his detention and providing an opportunity to challenge it upon his arrest. Dkt. No. 13 at 1.

Nearly two months after his arrest, Petitioner received a custody redetermination hearing before an immigration judge. Dkt. No. 1 ¶ 31. He contends that he submitted a 180-page evidentiary package in support of his release, which included his passport, Washington driver's license, pending asylum application, birth certificates and school records for his children, marriage certificate, documentation regarding his painting business, tax records, his current and prior leases, and letters of support from his accountant, former employers, wife, children, friends, and representatives from his church. *Id.* ¶ 32. DHS submitted Petitioner's four-page "Record of Deportable/Inadmissible Alien" and excerpts from his asylum application. *Id.* ¶ 33. The immigration judge denied Petitioner's request for release, finding that Petitioner had "failed to show he is not a flight risk." Dkt. No. 2-1 at 4. Petitioner has not appealed the outcome of that bond hearing to the Board of Immigration Appeals ("BIA").

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III. DISCUSSION**

The Petition brings claims for violations of Petitioner's Fifth Amendment due process rights based on ICE's failure to provide him with a pre-deprivation notice or hearing, as well as a failure to follow the procedures under 8 U.S.C. § 1226(a) in detaining him. Dkt. No. 1 ¶¶ 49–73. Petitioner argues that his post-deprivation bond hearing was insufficient to cure the pre-deprivation violation because the immigration judge's decision was arbitrary and unsupported by available evidence. *Id.* ¶¶ 74–89. Respondents oppose relief, arguing (1) that Petitioner is properly detained under § 1226(a) and has received the process he is due under that statute, and (2) that he must exhaust his administrative remedies by appealing his bond order to the BIA before seeking relief in habeas. Dkt. No. 10 at 1–3. For the reasons that follow, these arguments lack merit, and Petitioner is entitled to relief on his claim that he was unlawfully detained under § 1226(a).

With respect to exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Petitioner's claim that the procedures under § 1226(a) were unlawfully applied to him, falls into these exceptions. *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (waiver of exhaustion requirement proper where the petitioner raised a purely legal challenge). This type of claim cannot be reviewed by the BIA because it "is well settled that [the BIA] lack[s] jurisdiction to rule on the constitutionality of the [Immigration and Nationality Act] and [its] regulations." *In re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997); *Liu v. Waters*, 55 F.3d

421, 426 (9th Cir. 1995) ("Clearly the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws"). Accordingly, Petitioner's claims challenging the lawfulness of his continued detention under § 1226(a) may be reviewed by this Court.

Section 1226(a) "and its regulations guarantee noncitizens detained under that provision multiple levels of 'substantial procedural protections' against the erroneous deprivation of their liberty[,]" including arrest upon a valid warrant, notice of the basis for continued detention, an initial custody determination made by an immigration officer, and a bond hearing to challenge that determination. *Garcia-Maya v. Blanche*, No. 2:26-CV-01513-RFB-BNW, 2026 WL 1965886, at *5 (D. Nev. July 7, 2026) (quoting *Jacobo-Ramirez v. Mullin*, 834 F. Supp. 3d 1073 (D. Nev. 2026). As another court in this circuit has explained:

> The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages 'in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.' It also 'create[s] a record that permits meaningful review of whether the required procedure occurred.' And it is the 'mechanism' by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one.

*Regino Vicente Vicente v. Warden of San Bernardino Det. Ctr.*, No. 5:26-CV-05106-BFM, 2026 WL 3110053, at *3 (C.D. Cal. Oct. 16, 2026) (internal citations omitted). Given the importance of this initial custody determination in establishing that continued detention is necessary, and providing an opportunity for the noncitizen to request a hearing to contest the determination, "numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of noncitizen's due process rights." *Id.* at *4 (collecting cases); *see also*, *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-CV-05661-DAD-SCR (HC), 2026 WL 2294963, at *3 (E.D. Cal. Aug. 10, 2026); *Velasquez v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-CV-07997-DC-CSK (HC), 2026 WL 3151071, at *3 (E.D. Cal. Oct. 21, 2026); *Ramirez-Trejo v. Andrews*, No. 1:26-CV-08372-DC-CSK (HC), 2026 WL



United States District Court
Eastern District of California

3205146, at *3 (E.D. Cal. Oct. 26, 2026).

Here, Respondents have not demonstrated that "an ICE officer with designated authority conduct[ed] an initial custody determination at the outset of detention, wherein the noncitizen ha[d] an opportunity to 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the noncitizen is likely to appear for any future proceeding.'" *Garcia-Maya*, 2026 WL 1965886, at *5. Indeed, Petitioner's "Record of Deportable/Inadmissible Alien" does not reflect that an initial custody determination was made when Petitioner was arrested. *See* Dkt. No. 10-1 at 2–4. Respondents were prompted by the Court to provide additional evidence of ICE's compliance with § 1226(a) by producing Petitioner's Form I-286, which would have supplied the initial custody determination and provided Petitioner with an opportunity to request a hearing. *See* Dkt. No. 12. Respondents filed a supplement explaining that "there is no notice of custody determination in their files." Dkt. No. 13 at 1. Failure to make this initial custody determination renders Petitioner's arrest and detention under § 1226(a) unlawful. *See Moreno v. Chestnut*, No. 1:26-CV-07855-DC-JDP, 2026 WL 3136176, at *3 (E.D. Cal. Oct. 20, 2026) (failure by ICE to make initial custody determination rendered detention unlawful).

This violation was not remedied by the custody redetermination hearing Petitioner received two months after his initial arrest. "[F]ailure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2. Accordingly, the appropriate remedy is immediate release.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Amended Petition for Writ of Habeas Corpus is GRANTED as to claim one. Respondents are ORDERED to immediately release Petitioner from custody. If Respondents seeks to re-detain Petitioner, it must provide all the process to which he is statutorily entitled to under 8 U.S.C. § 1226(a). This Order does not address the circumstances in which

Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: November 13, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Eastern District of California